UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| PATRICK IRELAND and EMILY TOUCHSTONE, | ) |
|---|---|
| Plaintiffs, | ) ) ) ) |
| v. | ) NO. 3:20-cv-00502 ) ) |
| PAUL FLESER, M.D., | ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Plaintiffs Patrick Ireland and Emily Touchstone are suing Dr. Paul Fleser for allegedly injuring Mr. Ireland during an endovascular aneurysm repair ("EVAR") surgery. They allege Dr. Fleser's actions damaged Mr. Ireland's kidneys and ultimately led to severe hypertension and a heart attack.[1] Dr. Fleser has filed motions asking for summary judgment (Doc. No. 36) and dismissal (Doc. No. 56). Both motions contend Plaintiffs' lawsuit is untimely. The Court disagrees.

**I. BACKGROUND**

Dr. Fleser performed an EVAR surgery on Mr. Ireland on September 13, 2018. (Doc. No. 43 at 5). During the procedure, Dr. Fleser put a stent in Mr. Ireland's right renal artery. (Doc. No. 41-2 at 24). He had not planned to do so originally; it was "a decision that [he] made on the table." (Id.). Mr. Ireland contends that Dr. Fleser stented his artery in response to a mistake he made

---

[1] Plaintiffs also, originally, complained that Dr. Fleser injured Mr. Ireland by negligently administering heparin to him despite his heparin allergy. (See Doc. No. 41 at 6). However, Plaintiffs have abandoned that claim. (Id. ("To the extent Dr. Fleser[] . . . seeks summary judgment on claims arising from Dr. Fleser's negligent administration of heparin to an allergic patient, Plaintiffs do not dispute that they cannot recover damages for this negligence.")).

during the surgery stemming from Dr. Fleser's "preoperative misjudgments." (Doc. No. 41 at 8). Dr. Fleser maintains that he did not make a mistake. (Doc. No. 43 at 8).

After the surgery, Dr. Fleser told Mr. Ireland the procedure "went well." (Id. at 6). Dr. Fleser said he had stented Mr. Ireland's right renal artery as a precaution to make sure it stayed open. (Doc. No. 41-5 at 5). He did not indicate the stent was a response to a mistake or that it stemmed from preoperative misjudgments. (See Doc. No. 43 at 8).

On September 24, 2018, Mr. Ireland saw Dr. Fleser again in a planned follow-up appointment. (Id. at 13). During the follow-up, Dr. Fleser discussed the stent again. (Doc. No. 38-1 at 61). He said he had chosen to stent Mr. Ireland's right renal artery because he had discovered stenosis in Mr. Ireland's aorta and a lack of healthy tissue there. (Id.). Mr. Ireland left the follow-up thinking his EVAR procedure had been a success and "a real disaster had been averted." (Id. at 32).

Months later, on February 19, 2019, Mr. Ireland experienced left-flank pain. (Doc. No. 43 at 16). He went to a hospital and was diagnosed with severe hypertension and a heart attack. (Id.). On February 25, 2019, his doctors informed him that his hypertension and heart attack were related to his kidneys. (Id. at 17). His right kidney was atrophied and non-functioning, and his left kidney was functioning at 40 percent. (Id.). Soon after, one of Mr. Ireland's doctors told him that "someone blocked your kidney." (Id. at 18).

As a result, Plaintiffs began to investigate the cause of Mr. Ireland's new health problems and ultimately concluded they came from the allegedly botched EVAR procedure. (See Doc. No. 1). On September 17, 2019, Plaintiffs sent Dr. Fleser a notice informing him they intended to file a lawsuit against him. (Doc. No. 1-2). Plaintiffs then filed a complaint ("Complaint") on June 16, 2020, invoking the Court's diversity jurisdiction. (Doc. No. 1 ¶ 6). Dr. Fleser moved for summary

judgment on September 17, 2021 and for dismissal[2] on February 10, 2022. (Doc. Nos. 36, 56). The motions have been fully briefed. (Doc. Nos. 37, 41, 42, 57, 61, 62).

## II. LEGAL STANDARD

In reviewing a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016). Then, the court must "take all of those facts and inferences" and determine whether they "plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018). If the complaint's claim for relief is "plausible," then the court must deny the motion to dismiss and permit the case to proceed. Id.

In reviewing a motion for summary judgment, a court must determine whether a "genuine dispute as to any material fact" remains and whether the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where there is "evidence on which the jury could reasonably find for the [non-moving party]." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). When evaluating a summary judgment motion, the Court must view the record "in the light most favorable to the nonmoving party," accept that party's evidence "as true," and "draw all reasonable inferences in [that party's] favor." Laster v. City of Kalamazoo, 746 F.3d 714, 726 (6th Cir. 2014). The Court "may not make credibility determinations nor weigh the evidence" in its analysis. Id.

---

[2] Plaintiffs contend Dr. Fleser's motion to dismiss is untimely and ask the Court to construe it as a motion for judgment on the pleadings. (Doc. No. 61 at 4–5). The name the Court gives to the motion is immaterial though; the standard of review for a motion for judgment on the pleadings "is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389 (6th Cir. 2007).

3

## III. ANALYSIS

Dr. Fleser's motion for summary judgment and motion to dismiss both contend this lawsuit is untimely. (Doc. Nos. 36, 56). The primary distinction between the two is that the motion to dismiss raises a recent Sixth Circuit decision not seen in the motion for summary judgment. (Id.). For the following reasons, the Court will deny both motions.

### A. Dr. Fleser Is Not Entitled to Summary Judgment.

Dr. Fleser's summary judgment motion argues this case is untimely under Tennessee law. (Doc. No. 37 at 8). In Tennessee, "[t]he statute of limitations in health care liability actions [is] one (1) year." Tenn. Code Ann. § 29-26-116. There is also a provision permitting a 120-day extension to that limitations period ("extension provision"). Id. § 29-26-121. According to Dr. Fleser, Plaintiffs missed their deadline regardless of whether the extension provision applies because "the statute of limitations began to run by September 24, 2018," which was the date of Mr. Ireland's follow-up with Dr. Fleser. (Doc. No. 37 at 8).

Dr. Fleser's argument fails because Mr. Ireland's limitation period did not begin to run on September 24, 2018. The one-year limitation period starts "on the date the cause of action accrues." Sherrill v. Souder, 325 S.W.3d 584, 592 (Tenn. 2010). The cause of action accrues when "the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury." Id. Here, having exercised reasonable care and diligence, it did not cause Plaintiffs to discover Mr. Ireland's injury on or before the date of his follow-up with Dr. Fleser. Dr. Fleser's post-surgery communications with Plaintiffs (including those at the follow-up) indicated the EVAR procedure was a success. See supra Part I.

4

Although Dr. Fleser disclosed that he had placed a stent in Mr. Ireland's right renal artery,[3] he described the stent as a necessary precaution. (Doc. No. 38-1 at 61; Doc. No. 41-5 at 5). In these circumstances, it was reasonable for Plaintiffs to believe Dr. Fleser and assume they had no cause for concern. See Shadrick v. Coker, 963 S.W.2d 726, 734 (Tenn. 1998) ("As a reasonable lay person, Shadrick could have believed Dr. Coker when he informed him that the screws were routine for use in back-fusion surgeries, especially since Dr. Coker had never disclosed any risks or potential complications related to the use of the screws or even their experimental nature."). Accordingly, the Court finds Plaintiffs' limitations period did not start on or before September 24, 2018.

Instead, the limitations period began, at the earliest, on February 19, 2019. On that date, Mr. Ireland experienced left-flank pain, went to the hospital, and was diagnosed with severe hypertension and a heart attack. (Doc. No. 43 at 16). Reading the record in the light most favorable to Plaintiffs, this was the first indication they had that the EVAR operation had not been successful.[4] (See id. at 15).

Assuming Mr. Ireland's limitations period began on February 19, 2019, Plaintiffs had one

---

[3] Dr. Fleser claims Mr. Ireland should have realized he had a medical battery claim the moment he learned Dr. Fleser had placed the stent, which was not pre-planned, because medical battery arises from the "unpermitted touching of the plaintiff." (Doc. No. 37 at 12 (citation omitted)). The Court disagrees. An "injury is an essential element" of a medical battery claim. Range v. Sowell, No. M200602009COAR3CV, 2009 WL 3518176, at *8 (Tenn. Ct. App. Oct. 29, 2009). "[L]iability attaches for any injuries *resulting from* the treatment or procedure not consented to." Id. (emphasis added). Mr. Ireland did not know he was injured merely because he knew Dr. Fleser took actions during the EVAR surgery which were not pre-planned.

[4] Dr. Fleser's argument that "Mr. Ireland knew he was injured as a result of the surgery performed . . . by virtue of [an] allergic reaction" he had to heparin following the surgery is in vain. (Doc. No. 37 at 14). It is undisputed, at this stage, that Mr. Ireland "has not had any further reaction to the heparin used by Dr. Fleser since September 2018." (Doc. No. 43 at 11). And injuries that manifested far later than September 2018—kidney damage, hypertension, and a heart attack—are the focus of this lawsuit. (See Doc. No. 1 ¶¶ 48–52).

year from that date to either file their lawsuit or extend their limitations period. Tenn. Code Ann. §§ 29-26-116, 29-26-121. A plaintiff may lengthen their limitations period under Tennessee's extension provision by 120 days by providing notice of their impending lawsuit to the defendant. Id. § 29-26-121.

Plaintiffs extended their limitations period by providing Dr. Fleser with a pre-suit notice on September 17, 2019. (Doc. No. 1-2). This altered their filing deadline from February 19, 2020 to June 18, 2020. Plaintiffs then timely filed their lawsuit on June 16, 2020. (Doc. No. 1). Hence, Dr. Fleser is not entitled to summary judgment based on his claim that Plaintiffs failed to timely file the Complaint.

B. Dr. Fleser Is Not Entitled to Dismissal.

Dr. Fleser's motion to dismiss also fails. It raises a new case—Albright v. Christensen, 24 F.4th 1039 (6th Cir. 2022)—under which Dr. Fleser argues Tennessee's extension provision does not apply in federal court, which would mean the Complaint is untimely. (Doc. No. 56 at 1). The Court disagrees with Dr. Fleser's analysis. As outlined below, (1) the Erie doctrine[5] makes clear that Tennessee's limitations statutes (including the extension provision) apply to this case and (2) the decision in Albright does not undermine this conclusion.

Tennessee's statutes of limitation apply to this case under the Erie doctrine. According to that doctrine, a "federal court sitting in diversity must apply the substantive law . . . of the state in which it sits." Phelps v. McClellan, 30 F.3d 658, 661 (6th Cir. 1994). "Statutes of limitations are classified as *substantive* for Erie purposes." Id.; Blaha v. A.H. Robins & Co., 708 F.2d 238, 239 (6th Cir. 1983) ("Pursuant to the Erie doctrine, state statutes of limitations must be applied by

---

[5] The Erie doctrine is named after the Supreme Court's decision in Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

federal courts sitting in diversity."). Further, "[w]hen the application of state tolling . . . provisions would affect the running of the statute of limitations and thus affect the outcome of the lawsuit in state court, a federal court in a diversity action should apply those same state rules of decision in determining whether an action is barred by the applicable state statute of limitations." Ringrose v. Engelberg Huller Co., 692 F.2d 403, 405 (6th Cir. 1982). Hence, the Court finds it must apply Tennessee's limitations statutes—including the extension provision—to the case at bar.

The Sixth Circuit's decision in Albright does not change the Court's mind. Albright concerns a Michigan statute that requires plaintiffs bringing medical malpractice lawsuits to provide written notice to defendants at least 182 days before commencing the action. 24 F.4th at 1043. Albright finds the statute conflicts with Rule 3 of the Federal Rules of Civil Procedure. Id. at 1046. That rule "requires only the filing of a complaint to commence an action—nothing more." Id. Accordingly, Albright holds the Michigan statute does not apply in federal court. Id. This supports the established principle that federal rules preempt inconsistent state laws. Gallivan v. United States, 943 F.3d 291, 294 (6th Cir. 2019).

Unlike the Michigan statute at issue in Albright, Tennessee's extension provision is not inconsistent with Rule 3. Albright makes clear that "Rule 3 does not affect a state statute of limitations." 24 F.4th at 1047. Similarly, it states that laws that "affect[] the commencement of an action only for calculating [a] statute of limitations" do not conflict with Rule 3. Id. Because Tennessee's extension provision affects "*when* a lawsuit is commenced," not "*how* a lawsuit is commenced," it is consistent with Rule 3 and applicable to the instant case. Id.

Dr. Fleser's counterargument does not persuade the Court. He contends the Court must not apply the extension provision because a different part of its governing statute contains a requirement that plaintiffs provide notice 60 days before filing a healthcare liability lawsuit—

7

which *does* appear to conflict with Rule 3. (Doc. No. 62 at 3–4). But an inapplicable rule in one part of a state statute does not render the whole statute invalid. See Dalton v. Little Rock Fam. Plan. Servs., 516 U.S. 474, 476 (1996). Federal rules displace state laws "only to the extent that [they] actually conflict[] with federal law." Id. (citation and quotation omitted). So, "a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." Id. (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 502 (1985)). Consistent with that principle, even if the Court invalidated Tennessee's 60-day notice requirement (which is not at issue in this case), it still could not invalidate Tennessee's 120-day extension provision.

In sum: Dr. Fleser's motion to dismiss fails because, contrary to the motion's argument, Tennessee's extension provision applies here and Plaintiffs' lawsuit is timely.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Dr. Fleser's motions for summary judgment and dismissal. (Doc. Nos. 36, 56).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

8

Case 3:20-cv-00502   Document 65   Filed 05/04/22   Page 8 of 8 PageID #: 785